

**SIGNED THIS 13th day of June, 2019**

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| **LARRY KENNITH CLEVINGER** | ) | Case No. 18-71263 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **LARRY KENNITH CLEVINGER** | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | A.P. No. 19-07008 |
| | ) | |
| **BUCHANAN GENERAL HOSPITAL, INC.** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Larry Clevinger (the "Debtor") filed a voluntary Chapter 7 petition in this Court on September 24, 2018, at which time he claimed as exempt on his Schedule C $736.24 in garnished funds as an avoidable preference pursuant to Virginia Code § 34-4. The Debtor now seeks to avoid and recover what he claims is a preferential transfer to his judgment creditor Buchanan General Hospital ("BGH") under 11 U.S.C. §§ 542 and 547. In response, BGH argues

that the transfer of funds to BGH occurred outside the ninety-day preference period created in § 547(b)(4)(A) and that the Debtor did not timely file his homestead deed. Pursuant to the Scheduling Order entered April 12, 2019, the parties have filed briefs in support of their positions. Having reviewed the same, the Court makes the following conclusions.

## JURISDICTION AND VENUE

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (F), and (O).

## BACKGROUND

The parties do not dispute the facts of this case. BGH obtained a judgment against the Debtor on June 27, 2016 in the General District Court of Buchanan County, an abstract of which BGH docketed in the judgment lien docket of the Circuit Court of Buchanan County, Virginia on July 18, 2016. (ECF No. 8, ¶¶ 1, 2.) On February 27, 2018, BGH filed a Suggestion and Garnishment Summons against the Debtor and his employer, JRS Enterprise, Inc., with a return date of August 13, 2018 at 1:00 p.m. (*Id.* ¶ 3.) Pursuant to the garnishment, JRS Enterprise, Inc. withheld and forwarded to the General District Court the following payments: $179.36 on March 26, 2018; $233.35 on April 11, 2018; $140.98 on April 26, 2018; and $182.55 on May 11,

2018. (*Id.* ¶¶ 4–7.) The General District Court ordered the turnover of the withheld wages in the total amount of $736.24 to BGH on August 13, 2018.[1] (*Id.* ¶ 11.)

The Debtor filed his bankruptcy petition on September 24, 2018. (*Id.* ¶ 12.) Accordingly, the ninety-day preference period began on June 26, 2018. On October 19, 2018, the Debtor filed a homestead deed in the Circuit Court of Buchanan County, Virginia, claiming the garnished funds as exempt. (*Id.* ¶ 13.) The Chapter 7 Trustee took no action to recover the garnished funds and filed a report of no distribution on October 23, 2018. (*Id.* ¶ 15.)

Although the parties agree on the relevant facts, they disagree about when during the wage garnishment process in Virginia a "transfer" occurs for the purposes of § 547(b). The Debtor contends that the transfer of the funds from the General District Court to BGH constituted an avoidable transfer. (ECF No. 11, at 2–3.) He contends that because BGH received the funds on the garnishment return date of August 13, 2018, the transfer occurred within ninety days of the filing of the Debtor's bankruptcy case. (*Id.*) BGH, however, argues that the transfer did not occur when it actually received the funds, but when its judgment lien attached to the wages subject to garnishment. (ECF No. 10, at 3–4.) Although the return date fell within the ninety-day period, none of the actual withholdings or payments to the General District Court from his employer occurred within ninety days of filing. Thus, the primary issue the Court must decide is at what point in the garnishment process a transfer occurs for the purposes of § 547(b).

BGH also suggests that under Virginia Code § 34-4, the Debtor failed to file his homestead deed in a timely manner. In response, the Debtor appears to suggest that § 522(i) of

---

[1] The Debtor obtained different employment in June, and BGH filed a new Suggestion and Garnishment Summons, but the stipulated facts indicate that the Debtor's new employer never withheld funds pursuant to that garnishment. (*Id.* ¶¶ 8–10, 14.)

the Bankruptcy Code allows a debtor to exempt property recovered as an avoidable preference even if the Debtor failed to properly exempt the property.

## ANALYSIS

Section 547(b) of the Bankruptcy Code allows a trustee to

> avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>    (A) on or within 90 days before the date of the filing of the petition; . . . and
> (5) that enables such creditor to receive more than such creditor would receive if—
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). If a transfer is avoidable as a preference under § 547(b) and the trustee does not attempt to avoid it, the Debtor may step into the shoes of the trustee and avoid the preference on his own behalf "to the extent that the debtor could have exempted such property under subsection [522](g)(1)." *Id.* § 522(h). In turn, § 522(g)(1) allows a debtor to exempt property recovered under § 547 "to the extent that the debtor could have exempted such property under" § 522(b), so long as the transfer was involuntary and the debtor did not conceal the property. *Id.* § 522(g).[2]

The root of the parties' disagreement over *when* the transfer occurred in this case is actually a disagreement over *what* constitutes a transfer for the purposes of § 547(b). As it

---

[2] The parties in this case do not appear to disagree over whether a transfer occurred for BGH's benefit on account of an antecedent debt. Nor do they address the requirements set out in § 547(b)(1)–(3) or (5). Rather, they focus their arguments only on whether the transfer took place within ninety days before the Debtor filed his petition in this Court.

4

pertains to wages garnished under Virginia law, the Debtor argues that a transfer does not occur until he loses all ownership interest in the property at issue, while BGH asserts that the relevant transfer occurs at the time a creditor's lien attaches to the garnished funds. Based on how the Bankruptcy Code defines "transfer" in § 101, both parties may technically be correct. *See* 11 U.S.C. § 101(54); *In re Wilkinson*, 196 B.R. 311, 319 (Bankr. E.D. Va. 1996).

The Bankruptcy Code defines "transfer" as "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54). Thus, it appears that multiple "transfers" may occur throughout the garnishment process.

The Bankruptcy Court for the Eastern District of Virginia acknowledged this expansive definition of "transfer" in *In re Wilkinson*. Faced with a similar dispute, the court in *Wilkinson* resolved the issue of whether "the debtor may recover funds that had been withheld from his wages more than 90 days prior to his chapter 7 filing but where the order of payment directing the employer to pay those funds to the judgment creditor was entered within 90 days of the chapter 7 filing." *Id.* at 314. Specifically, the court had to determine "when the relevant 'transfer' occurred for the purposes of § 547." *Id.* at 319. As for what constituted a transfer, the court noted, "it is apparent that a completed garnishment involves two conceptually distinct transfers: the first, when the execution lien attaches to the debtor's interest in the garnished funds, and the second, when the funds are paid over to the judgment creditor." *Id.* To determine the operative transfer date for § 547(b), the court considered which of the two transfers improved the position of the creditor as required by § 547(b)(5). *Id.* at 320. Ultimately, the court held that the relevant transfer for § 547(b) occurs on the date the execution lien attaches to the funds. *Id.*

5

at 323 ("[I]f the wages paid over became subject to the execution lien *more* than 90 days prior to the bankruptcy filing, then the payment cannot be avoided as a preference."). This accords with other cases decided within the Fourth Circuit, including by this Court. *See, e.g.*, *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir. 1968); *In re Lamm*, 47 B.R. 364 (E.D. Va. 1984); *Jones v. Eastern Vault Company (In re Jones)*, No. 11-71854 (Bankr. W.D. Va. Apr. 6, 2012); *Hughson v. Dressler Motors, Inc. (In re Hughson)*, 74 B.R. 438 (Bankr. W.D. Va. 1987); *Canfield v. Simpson (In re Jones)*, 47 B.R. 786 (Bankr. E.D. Va. 1985).

This Court has seen similar facts in two prior cases. In *Hughson*, the court noted that "[i]n Virginia, the execution of a writ of *fieri facias* establishes a lien on intangibles from the time it is delivered to the officer charged with serving it." 74 B.R. at 439 (citing Va. Code § 8.01-501). Citing § 547(e)(3)'s rule that a transfer does not occur until a debtor acquires rights in the property transferred, the Court further determined that any lien does not attach to merely potential earnings. *Id.* at 439–40. Rather, the lien may exist, but does not attach until wages are actually earned. *Id.* Accordingly, if a creditor establishes a lien on wages pursuant to a writ of *fieri facias*, that lien attaches to future wages on the date the debtor earns those wages. Relying on *Hughson*, the Court similarly held in *Eastern Vault Company* that "the lien of the garnishment summons came into existence more than ninety days prior to the filing date of this bankruptcy case and attached to the male Debtor's wages at the time such wages were earned." *Eastern Vault Company*, No. 11-71854, at *7.

The Court agrees with *Wilkinson*'s analysis. Although wage garnishment may involve multiple "transfers," the relevant transfer date for the purpose of § 547(b) is the date the garnishment lien attaches to the Debtor's wages under Virginia law. Here, BGH filed a garnishment summons on February 27, 2018, pursuant to which BGH's lien attached to the

6

Debtor's wages paid between March 26, 2018 and May 11, 2018.[3] The Debtor thus earned his wages, and his employer paid those withheld funds to the General District Court, all prior to the start of the ninety-day preference period set out in § 547(b)(4)—in this case, June 26, 2018. Accordingly, under *Wilkinson* and this Court's precedent in *Hughson* and *Eastern Vault Company*, the Debtor cannot succeed in avoiding the transfer as a preference.

In his supporting brief, the Debtor suggests that *Eastern Vault Company* was based on a misunderstanding of several cases interpreting relevant Virginia Code provisions, including *United States v. Harkins Builders*, 45 F.3d 830 (4th Cir. 1995), *Canfield*, and *Wilson v. Virginia National Bank*, 214 Va. 14 (1973).[4] (ECF No. 11, at 3.) Instead, the Debtor suggests this Court's recent decision in *In re Underwood* should control. No. 18-70168, 2018 WL 2717045 (Bankr. W.D. Va. May 30, 2018).

In *Harkins Builders*, the Fourth Circuit engaged in an extensive discussion of Virginia's garnishment process. Discussing a creditor's lien of execution, the court stated:

> "[T]he creditor 'does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for it or its value.'" . . . In other words, by act of garnishment, the judgment creditor does not replace the judgment debtor as owner of the property, but merely has the right to hold the garnishee liable for the *value* of that property.

45 F.3d at 833 (quoting *Lynch v. Johnson*, 196 Va. 516, 520 (1954)).

By citing to the Fourth Circuit's opinion, the Debtor here advances the same position as the debtor in *Eastern Vault Company*, which this Court already declined to adopt—that the

---

[3] The Court notes that the dates provided in the parties' Stipulation of Agreed Facts reflect the dates JRS Enterprise, Inc. withheld funds from the Debtor's paycheck. Presumably, the Debtor earned the funds during the preceding weeks.

[4] Interestingly, *Eastern Vault Company* does not address either *Wilson* or *Canfield*. *Wilson* does not provide much insight into the current issue. *Canfield* on the other hand directly supports BGH's position. There, the court considered garnishment of funds from a bank account and similarly held that a transfer occurred on the date the lien attached to the funds. *See Canfield*, 47 B.R. 786, 790–91 (Bankr. E.D. Va. 1985).

7

relevant transfer date is not when BGH gained an interest in the property, but when the Debtor's ownership interest ended. *See Eastern Vault Company*, No 11-71854, at *4 ("From the Debtors' perspective, the central factor is not when their ownership interest in the garnisheed funds began, but rather when it ended."). The issue in *Harkins Builders*, however, was "whether a judgment creditor, pursuing a garnishment proceeding against a garnishee who owed money to the judgment debtor under a contract, is bound by a mandatory arbitration clause in that contract." *Harkins Builders*, 45 F.3d at 831. The Fourth Circuit did not address transfers under § 547(b), and its synopsis of Virginia's garnishment law is inconsequential to the issue at hand.

For further support, the Debtor directs the Court to its decision in *Underwood*. In so doing, it appears the Debtor has conflated the processes of lien avoidance and the avoidance of preferential transfers and has misconstrued this Court's holding in that case. In *Underwood*, the Court reviewed *Harkins Builders*, *Canfield*, and *Wilson*, among other cases, to hold that under § 522(f) a debtor could avoid a garnishment lien held by a judgment creditor only if the debtor had an interest in the subject property. *Underwood*, 2018 WL 2717045, at *3. The Debtor thus argues that until he is completely divested of any interest in the garnished funds, no transfer has occurred. (ECF No. 11, at 3.) Significantly, *Underwood* involved lien avoidance under § 522(f), which requires that a debtor have an interest in the subject property. *See* 11 U.S.C. § 522(f) (allowing a debtor to "avoid the fixing of a lien on an *interest of the debtor in property*"). There is no language in § 547(b), however, that limits avoidance of preferential transfers to situations where a debtor has transferred 100% of his interest in property. Rather, the Bankruptcy Code specifically states that "the trustee may avoid *any* transfer of an interest of the debtor in property." 11 U.S.C. § 547(b) (emphasis added). Thus, whether the debtor retains an interest in the property is not a critical factor in an action under § 547(b).

8

*Wilkinson* makes this distinction clear.  In addition to considering a preferential transfer under § 547(b) as discussed above, the debtor in *Wilkinson* alternatively sought to avoid the garnishing creditor's lien under § 522(f).  *Wilkinson*, 196 B.R. at 314.  The court observed that "the debtor no longer had an interest in the withheld wages when he filed for bankruptcy relief, since they had been paid over to the judgment creditor more than six weeks earlier." *Id.* at 317.[5] "It is the extinguishment of that interest that is fatal to the debtor's attempt to recoup the garnished wages under § 522(f)." *Id.*  Ultimately, the court disallowed the lien avoidance motion because the debtor no longer had an interest in garnished funds. *Id.* at 317–18.  As discussed above, it nonetheless went on to hold under its § 547(b) analysis that a transfer of the debtor's wages occurs when a creditor's garnishment lien attaches to those funds. *Id.* at 323.  *Wilkinson* thus illustrates that, contrary to the Debtor's argument, the different treatment of debtors in *Underwood* and *Eastern Vault Company* do not conflict.

The Court finds that the facts of this case align with those in *Eastern Vault Company* and *Wilkinson* and are distinguishable from those in *Underwood*.  Accordingly, the Court will deny the requested relief.  The Debtor earned the $736.24 at issue prior to the ninety-day preference period which began on June 26, 2018.  Considering BGH's garnishment lien attached at the time the Debtor earned his wages, the relevant transfers for the purposes of § 547(b) also occurred prior to the June 26, 2018 start of the preference period.

Because the Court will deny relief for the above reasons, it need not address BGH's argument that the Debtor failed to file his homestead deed timely.

---

[5] *Underwood* is consistent with this analysis.  In *Underwood*, the garnished funds remained in the hands of the clerk of court, and no order directing payment to the garnishor was entered at the time the debtor filed for bankruptcy. Because the debtor retained an interest in the garnished funds under Virginia law, the Court determined that the debtor had the right to exempt the property after the petition was filed and that the § 522(f) lien avoidance was proper. *Underwood*, 2018 WL 2717045, at *3–4.

## CONCLUSION

For the foregoing reasons, the Court finds that the Debtor's interest in the $736.24 in garnished wages was transferred to BGH prior to the ninety-day preference period of § 547(b)(4). Accordingly, the Debtor may not recover the garnished funds under § 547(b).

A separate Order will be entered contemporaneously herewith.